```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X
                                     :
UNITED STATES OF AMERICA             :
                                     :
          - v. -                     :
                                     :
NICHOLAS RUSSELL JAMES GILLIE,       :    SEALED
     a/k/a "James William Carter,"   :    SUPERSEDING INDICTMENT
NEOPHYTOS GEORGIOU,                  :
     a/k/a "Nick,"                   :    S9 21 Cr. 189
     a/k/a "PT,"                     :
     a/k/a "The Boss,"               :
URS MEISTERHANS,                     :
SCOTT STEVEN NEILSON,                :
LIAM JAMES SMOUT,                    :
     a/k/a "Pringle,"                :
DANIEL NIELSEN,                      :
BRENDA LAVERTY,                      :
ANDREW GEORGIOU,                     :
     a/k/a "Andy,"                   :
THOMAS ANDREW KENNY,                 :
     a/k/a "Irish," and              :
JAKE MARDELL,                        :
                                     :
               Defendants.           :
                                     :
- - - - - - - - - - - - - - - - - - X
```

**COUNT ONE**
(Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

**Overview of the Investment Fraud Scheme**

1. From at least in or about 2015 up to and including the present, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW

GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, participated in a sophisticated international mass-marketing investment fraud scheme to defraud English-speaking investors from around the world of millions of dollars, and to launder the fraud proceeds and distribute those proceeds among the conspirators.

2.   As part of the investment fraud scheme, conspirators purported to be employees of successful financial investment firms and took sophisticated steps to convince victims of the firms' existence and legitimacy. Those steps commonly included impersonating real financial investment firms, creating fraudulent websites that appeared to be associated with the real firms, creating fraudulent email addresses that appeared to be associated with employees of the real firms, publishing fraudulent news articles relating to the fake firms and their supposed investments, utilizing a widely-used internet search engine to disseminate scheme-related online advertisements, creating fraudulent investment-related contracts and other financial and legal documents, and using the names, titles, signatures, email addresses, and likenesses of real individuals prominent in business and finance. Employing those tactics, among others, and through hard-sell telemarketing calls and emails with victim-investors orchestrated from so-called "boiler

rooms" located in Cyprus, Spain, Romania, and Cambodia, the conspirators convinced victims to transfer funds to one or more bank accounts under the conspirators' control (the "Victim Depository Accounts") for what the victims understood to be investments in various companies – that is, the purchase of company shares. In reality, however, the conspirators' purported financial investment firms were fake, the purported share purchases were fraudulent, and the money sent by victims was never returned. The combined losses of victims exceeded six million U.S. dollars.

### Overview of the Money Laundering Scheme

3.  Rather than being used to make investments, the funds that victims transferred to the Victim Depository Accounts were sent back to the conspirators by individuals sometimes referred to by conspirators as "bankers" (the "Bankers"), who were in fact responsible for laundering the proceeds of the investment fraud scheme. As part of the fraud and money laundering schemes, the Bankers opened the Victim Depository Accounts, commonly in the name of shell companies, to receive incoming transfers from victims of the investment scheme. The Bankers then transferred the fraud proceeds from the Victim Depository Accounts — minus a percentage-based fee, which varied but was generally greater than ten-percent, kept by the Bankers — back to other conspirators directly or through a series of financial

3

transactions. For example, fraud proceeds were at times transferred from a Banker to bank accounts held in the names of individuals who do not actually exist, such as "James William Carter" and "Jonathan Timothy Turner," but in whose name the conspirators had opened bank accounts using fake United Kingdom passports and other documents. The fraud proceeds were then distributed among the conspirators, as salary or commission, for their participation in the investment fraud scheme. In the course of the money laundering scheme, the Bankers commonly provided false descriptions of the financial transactions used to launder fraud proceeds, such as describing a transaction as a repayment of a cash advance, or as the payment of an invoice for an item, service, or joint venture. At times, the Bankers and other conspirators provided false documents, such as fraudulent invoices, to banks and other individuals.

### The Defendants' Roles

4. During the time period relevant to this Indictment, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, operated out of Cyprus, Spain, Romania, and Cambodia, and played a

4

variety of roles in the investment fraud and money laundering schemes, including the following roles.

      a.    **NICHOLAS RUSSELL JAMES GILLIE**, a/k/a "James William Carter," the defendant, managed the boiler rooms, from which he and other co-conspirators contacted victim-investors and solicited fraudulent investments. GILLIE recruited telemarketers, devised hard-sell phone call scripts and fake companies designed to deceive victim-investors, and was himself a telemarketer who communicated directly with victims under the alias "James William Carter," among others. GILLIE possessed a fake passport in the name of "James William Carter," and opened bank accounts in the name of that alias that were used to receive laundered fraud proceeds.

      b.    **NEOPHYTOS GEORGIOU**, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," the defendant, was GILLIE's longstanding partner in Cyprus. At times, GILLIE emailed to GEORGIOU weekly accounting spreadsheets that set out expenses – such as fees for renting an office, registering fraudulent internet domains, and the costs of flights for newly-recruited telemarketers – salaries and commissions for co-conspirators, and the status of funds from victim-investors. NEOPHYTOS GEORGIOU, who owns bars and restaurants in Cyprus, financed the costs of the investment fraud scheme and received the largest share of fraud proceeds. NEOPHYTOS GEORGIOU controlled bank accounts in his own name, and

in the names of others, including "Jonathan Timothy Turner," which were used to receive laundered fraud proceeds and distribute those funds to co-conspirators.

c. **ANDREW GEORGIOU**, a/k/a "Andy," the defendant, is NEOPHYTOS GEORGIOU's brother and is married to **BRENDA LAVERTY**, the defendant. ANDREW GEORGIOU and LAVERTY were boiler room office managers, mostly based in Cyprus, who, among other things, assisted in the tracking and distribution of fraud proceeds, including through payroll accounting sheets. For those services, ANDREW GEORGIOU and LAVERTY were paid a portion of the fraud proceeds.

d. **THOMAS ANDREW KENNY**, a/k/a "Irish," the defendant, was likewise a boiler room office manager who, among other things, assisted in the tracking and distribution of fraud proceeds, including through payroll accounting sheets. For those services, KENNY was paid a portion of the fraud proceeds.

e. **JAKE MARDELL**, the defendant, was a telemarketer who directly solicited fraudulent investments from victim-investors, was listed in payroll records maintained by co-conspirators, and received commissions for soliciting particular fraudulent victim investments.

f. **SCOTT STEVEN NEILSON**, the defendant, partnered with GILLIE to manage a boiler room in Spain in or about 2018. NEILSON's role included, among other things, tracking victim

payments and distributing fraud proceeds to co-conspirators. While partners in or about 2018, NEILSON and GILLIE evenly split the fraud proceeds, after paying other participants in the scheme.

  g. **LIAM JAMES SMOUT**, a/k/a "Pringle," the defendant, was a telemarketer who directly solicited fraudulent investments from victim-investors, was paid commissions for soliciting particular fraudulent victim investments, and was listed in payroll records maintained by co-conspirators.

  h. **DANIEL NIELSEN**, the defendant, worked in boiler rooms and operated bank accounts that were used to transfer and launder the proceeds of the scheme. NIELSEN was paid a percentage of fraud proceeds for his participation in the scheme and was listed in payroll records maintained by co-conspirators.

  i. **URS MEISTERHANS**, the defendant, was a key Banker – that is, a money launderer – in the scheme. Among other things, MEISTERHANS set up and controlled Victim Depository Accounts in several countries, including the United States, that received victim funds and were used to launder fraud proceeds back to co-conspirators. MEISTERHANS's U.S. bank accounts were held in the names of Delaware shell companies and managed by a co-conspirator not named in this Indictment ("CC-1").

**Impersonation of the New York Fund and Certain Individuals**

5.      One component of the years-long investment fraud scheme involved the impersonation, in or about 2019, of a New York-based private investment fund (the "New York Fund") founded by an internationally renowned billionaire investor (the "Founder").

6.      As part of the scheme, in or about February 2019, the conspirators established an internet domain resembling the name of the New York Fund and set up email accounts as well as a fraudulent website that used that domain. Among other things, the fraudulent website listed a global headquarters address on Wall Street in Manhattan. When communicating with victim-investors by email or phone, the conspirators claimed to be employees of the New York Fund, invoked the name of the Founder in calls and emails, and at times claimed to be physically present in New York while communicating with the victim-investors. While impersonating the New York Fund, conspirators fraudulently induced victim-investors from Australia, Europe, and elsewhere, to enter into various purported investments, including the supposed purchase of "pre-IPO" shares of a successful and relatively young international company that did not have its shares listed on a public stock exchange ("Company-1").

7.  For example, one victim-investor ("Victim-Investor-1") agreed to purchase Company-1's pre-IPO shares from the fake New York Fund in or about August 2019. As part of fraudulently soliciting investment funds from Victim-Investor-1, the conspirators sent Victim-Investor-1 fake contracts purporting to show that investment banks had agreed to purchase Company-1 shares from the New York Fund at prices nearly 500% above the price that the conspirators quoted Victim-Investor-1 for the shares. The fake contracts appeared to be signed or authorized by senior executives of the relevant firms – who were, in fact, real financial executives – but the use of the executives' names, titles, signatures, and email addresses, was fraudulent.

8.  The victims of the fake New York Fund scheme were frequently in contact with "James William Carter," an alias used by NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," the defendant, and others known and unknown. On or about September 6, 2019, the conspirators impersonating the New York Fund sent a second victim-investor ("Victim-Investor-2") a photograph of a fake United Kingdom passport in the name of "James William Carter." The individual pictured on the fake passport appears to be GILLIE.

### U.S. Bank Accounts Were Used in the Scheme

9.  As described above, during the time period relevant to this Indictment, victim-investors – including Victim-Investor-1,

9

Victim-Investor-2, and other victims of the New York Fund fraud – were directed by the conspirators to send payments to Victim Depository Accounts in the United States, among other places. Multiple U.S. Victim Depository Accounts that received incoming wire transfers from victims were held in the name of Delaware shell companies controlled by URS MEISTERHANS, the defendant, and managed by CC-1, who acted at MEISTERHANS's direction. Once funds from victims of the fake New York Fund fraud and other components of the investment fraud scheme were received in the U.S. Victim Depository Accounts, MEISTERHANS directed CC-1 to transfer the fraud proceeds to accounts in other countries controlled by MEISTERHANS or other co-conspirators, including SCOTT STEVEN NEILSON and DANIEL NIELSEN, the defendants, and several close associates of DANIEL NIELSEN. Incoming wires from victim investors, including Victim-Investor-1 and Victim-Investor-2, to the U.S. Victim Depository Accounts, as well as outgoing wires from the U.S. Victim Depository Accounts to conspirators, passed through correspondent banks located in the Southern District of New York.

## STATUTORY ALLEGATIONS

10.    From at least in or about 2015 up to and including the present, in the Southern District of New York and elsewhere, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss,"

URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

    11. It was a part and an object of the conspiracy that NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

    (Title 18, United States Code, Section 1349.)

## COUNT TWO

(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

12. The allegations contained in paragraphs 1 through 9 are repeated and realleged as though fully set forth herein.

13. From at least in or about 2015 up to and including the present, in the Southern District of New York and elsewhere, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(a)(2)(B)(i).

14. It was a part and an object of the conspiracy that NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions

represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud scheme in violation of Title 18, United States Code, Section 1343 alleged in Count One of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

15.  It was further a part and an object of the conspiracy that NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, and others known and unknown, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the

proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud scheme in violation of Title 18, United States Code, Section 1343 alleged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Section 1956(h).)

### COUNT THREE
(Aggravated Identity Theft)

The Grand Jury further charges:

16. The allegations contained in paragraphs 1 through 9 are repeated and realleged as though fully set forth herein.

17. From at least in or about 2018 up to and including the present, in the Southern District of New York and elsewhere, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title

18, United States Code, Section 1028A(c), to wit, GILLIE, NEOPHYTOS GEORGIOU, MEISTERHANS, NEILSON, SMOUT, NIELSEN, LAVERTY, ANDREW GEORGIOU, KENNY and MARDELL, without lawful authority, used and aided and abetted the use of the names, titles, signatures, email addresses, and likenesses of prominent individuals in business and finance, during and in relation to the wire fraud scheme alleged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## FORFEITURE ALLEGATIONS

18. As a result of committing the offense alleged in Count One of this Indictment, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(8), any and all real or personal property used or intended to be used to commit, to facilitate, or to promote the commission of said offense; and any and all real or personal property constituting, derived from, or traceable to the gross proceeds that the defendants obtained directly or indirectly as a result of said offense, including but not limited to a sum of money in United

States currency representing the amount of proceeds traceable to the commission of said offense.

19. As a result of committing the offense alleged in Count Two of this Indictment, NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter," NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss," URS MEISTERHANS, SCOTT STEVEN NEILSON, LIAM JAMES SMOUT, a/k/a "Pringle," DANIEL NIELSEN, BRENDA LAVERTY, ANDREW GEORGIOU, a/k/a "Andy," THOMAS ANDREW KENNY, a/k/a "Irish," and JAKE MARDELL, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

**Substitute Assets Provision**

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

>(Title 18, United States Code, Section 982;
>Title 21, United States Code, Section 853; and
>Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

NICHOLAS RUSSELL JAMES GILLIE, a/k/a "James William Carter,"
NEOPHYTOS GEORGIOU, a/k/a "Nick," a/k/a "PT," a/k/a "The Boss,"
URS MEISTERHANS,
SCOTT STEVEN NEILSON,
LIAM JAMES SMOUT, a/k/a "Pringle,"
DANIEL NIELSEN,
BRENDA LAVERTY,
ANDREW GEORGIOU, a/k/a "Andy,"
THOMAS ANDREW KENNY, a/k/a "Irish," and
JAKE MARDELL,

Defendants.

---

**SEALED**
**SUPERSEDING INDICTMENT**

S9 21 Cr. 189

(18 U.S.C. §§ 1028A, 1349, 1956(h), and 2.)

AUDREY STRAUSS
United States Attorney

*[signature]*
Foreperson